UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| DOCTOR JOHN'S INC.,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE OF CAHOKIA, ILLINOIS and CURTIS MCCALL,<br><br>Defendants. | Case No. 3:18-cv-00171-JPG-RJD |

**MEMORANDUM AND ORDER**

**J. PHIL GILBERT, DISTRICT JUDGE**

Doctor John's, Inc.—a retailer that specializes in intimate adult apparel, magazines, novelties, and the like—wants to build a store in the Village of Cahokia, Illinois. But the village council rejected the company's application for a business license, so Doctor John's brought this lawsuit that alleges a number of constitutional violations. The defendants now move to dismiss the complaint for failure to state a claim. (ECF No. 25.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** that motion.

## I. BACKGROUND

One day in the summer of 2017, Doctor John's leased a storefront in Cahokia, Illinois, where they planned to open a shop that would specialize in a number of adult wares. (Am. Compl. ¶ 17, ECF No. 16.) Some of those goods are relatively tame: lingerie, swimwear, t-shirts, costumes, loungewear, and so on. (*Id.* at ¶ 13.) But Doctor John's also planned on selling adult wares aimed at "enhancing romance," such as pornographic magazines and DVDs, massage oils and other "adult novelties." (*Id.* at ¶ 14–16, 25.) Doctor John's operates a number of stores, but they claim that they change the exact mix of items at each store in order to comply with corresponding local rules and zoning regulations. (*Id*. at ¶ 17.)

1

After Doctor John's signed the lease, they filed a business license application with Cahokia. (*Id*. at ¶¶ 18–19.) Months passed, and the city did nothing—despite Doctor John's repeated attempts to have the Village Board put the application on their agenda. (*Id.* at ¶ 19.) Finally, in December 2017, the Village Clerk of Cahokia sent Doctor John's a letter explaining that the Village would not license the business because the B-1 zoning regulation—which governs the proposed address of the store—would not allow for it. (*Id.* at ¶¶ 20–21.) The B-1 ordinance principally authorizes:

> Any local retail business or service establishment supplying commodities or performing services primarily for residents of the day-to-day basis including groceries, supermarkets, fruit and vegetable stores[,] garden supply stores, drug stores, barber shops, beauty parlors, clothes cleaning and laundry pick-up stores, and self-service laundry.

(*Id*. at ¶ 22.)

Two days after Doctor John's received that letter from the Clerk, the Village passed an ordinance aimed at adult businesses. That ordinance places restrictions on businesses with "adult uses," which includes adult bookstores, novelty stores, entertainment facilities, cabarets, and the like. The following three "adult use" categories apply to this case:

> **Adult Bookstore:** A public or private establishment which has a substantial or significant portion of its stock in trade books, magazines, films for sale or viewing on premises by use of motion picture devices or any other coin operated means, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "specified sexual activities," or "specified anatomical areas," or an establishment that holds itself out to the public as a purveyor of such materials based upon its signage, advertising, displays, actual sales, presence of video preview or coin operated booths, the exclusion of minors from the establishment's premises, or any other factors showing that the establishment's primary purpose.

> **Adult Entertainment Facility:** …[A]ny adult bookstore or adult video store whose primary business is the commercial sale, dissemination, or distribution of sexually explicit material, shows, videos, or other live or taped exhibitions.

**Adult Novelty Store**: An establishment having a substantial or significant portion of its sales or stock in trade consisting of toys, devices, clothing "novelties," lotions and other items distinguished or characterized by their emphasis on or use for specialized sexual activities or **specified anatomical areas** or an establishment that holds itself out to the public as a purveyor of such materials based upon its signage, advertising, displays, actual sales, exclusion of minors from the establishment's premises or any other factors showing the establishment's primary purpose is to purvey such material.

(*Id.* at ¶ 24; ECF No. 1-3, pp. 1–2.) "Specified anatomical areas" include, but are not limited to, "female breast[s]" and "human genitals." (ECF No. 1-3, p. 2.) Finally, the ordinance mandates the following zoning restrictions:

1. An adult use shall not be permitted within one thousand feet (1,000') of any premises upon which an establishment is licensed to sell, dispense[,] or deliver alcoholic beverages.

2. An adult use is only permittable in a M-2 General Industrial Zoning District.

3. An adult use shall not be permitted or allowed within one thousand feet (1000') of a school, public park, playground, day care center or facility, public housing property, church or other religious facility or institution, government building, institution of higher education[,] or cemetery.

(*Id.* at p. 3.)

The procedural issues become a bit murky here: even though the Village passed the ordinance after they first denied Doctor Johns's application for a business license, Doctor John's says that the Village also told the company that they were an "Adult Entertaintment Business" and therefore subject to the zoning regulations in the adult uses ordinance. (Am. Compl. ¶ 25–28, ECF No. 16.) Doctor John's then explained to the Village that the ordinance does not apply to them because (1) Doctor John's is a "clothing and accessory store selling items relating to the enhancement of romance" rather than an "Adult Entertainment Business"; and (2) that, if necessary, Doctor John's was willing to tinker with its inventory in order to come into compliance with the ordinance's restrictions—just like they have done with their other stores. (*Id.*) The Village

allegedly rebuffed Doctor John's explanation without viewing its business plan, proposed business operations, or inventory. (*Id*. at 26.) So Doctor John's turned and sued the Village and its mayor—Curtis McCall—in this Court under 42 U.S.C. §1983, alleging violations of the First, Fifth, and Fourteenth Amendments. The defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARDS

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.    ANALYSIS

As an initial matter, the complaint in this case is messy and duplicitous. The defendants already filed two motions for a more definite statement under Federal Rule of Civil Procedure

8(a)(2), and after further briefing in front of the magistrate judge, we arrived at this amended complaint. But the amended complaint is still lacking. The magistrate judge construed the claims in that pleading as follows:

> I. Due Process Claim
> II. First Amendment Free Speech Claim
> III. Right to Privacy Claim
> IV. Claim for Injunctive Relief
> V. Equal Protection Claim
> VI. First Amendment Free Speech Claim
> VII. First Amendment Free Speech Claim
> VIII. Fifth Amendment Regulatory Taking Claim
> IX. First Amendment Free Speech Claim
> X. Demand for Attorneys' Fees

(ECF No. 22, p. 2.) A broader reading of the complaint, however, reveals a cavalcade of theories:

> **Count I**: First Amendment; Fourteenth Amendment Procedural Due Process; Fourteenth Amendment Equal Protection; Fourteenth Amendment Substantive Due Process
>
> **Count II**: First Amendment
>
> **Count III**: Fourteenth Amendment Substantive Due Process; Fourteenth Amendment Equal Protection
>
> **Count IV**: Injunctive Relief; First Amendment; Fourteenth Amendment Procedural Due Process; Fourteenth Amendment Equal Protection; Fourteenth Amendment Substantive Due Process
>
> **Count V:** First Amendment; Fourteenth Amendment Substantive Due Process; Fourteenth Amendment Equal Protection
>
> **Count VI**: First Amendment
>
> **Count VII**: First Amendment
>
> **Count VIII**: First Amendment; Fourteenth Amendment Procedural Due Process
>
> **Count IX**: First Amendment
>
> **Count X**: Attorney's Fees

Rather than address each count in turn, the Court will address each alleged constitutional violation in turn. And as described in more detail at the conclusion of this order, Doctor John's must file a second-amended complaint that remedies the issues described herein. *See Schur v. L.A. Weight Loss Centers, Inc*., 577 F.3d 752, 760 (7th Cir. 2009) (a district court judge "is not precluded from reviewing a magistrate judge's order to which a party did not object.")

### A.     The First Amendment

The First Amendment theory is not difficult. While Doctor John's has unnecessarily stretched it amongst many counts in the complaint, the core question is simple: whether the Village violated the company's First Amendment rights by denying Doctor John's a business license pursuant to the "adult uses" zoning ordinance. That question is governed by *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46 (1986). *Renton* held that even if a zoning ordinance appears to blatantly discriminate against certain types of speech, the ordinance can survive a First Amendment challenge if the defendant can show that the goal of the ordinance is to suppress the "secondary effects" of that speech rather than the speech itself. 475 U.S. at 48, 49. If the defendant can prove that, then the Court must consider the zoning ordinance to be a content-neutral time, place, and manner restriction—and restrictions of that variety must only be "designed to serve a substantial governmental interest and [allow] for reasonable alternative avenues of communication." *Id.* at 50; *see also City of Los Angeles v. Alameda Books, Inc*., 535 U.S. 425 (2002); *Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702, 713–14 (7th Cir. 2003); *Annex Books, Inc. v. City of Indianapolis*, 740 F.3d 1136, 1137 (7th Circ. 2014). The zoning ordinance must also be narrowly tailored to serve the Government's substantial interest. *Ben's Bar, Inc.*, 316 F.3d at 713–14 (citing *Schultz v. City of Cumberland*, 228 F.3d 831, 845 (7th Cir. 2000).

Here, the zoning ordinance states that its intent and purpose is:

6

> [T]o regulate uses which, because of their nature, are recognized as having serious objectionable, operational characteristics, particularly when several of them are concentrated in a particular area, thereby having a deleterious effect upon the adjacent areas. Regulation of such uses is necessary to ensure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood. The primary control or regulation is for the purpose of preventing a concentration of these uses in any one area.

So the Village has purportedly aimed the ordinance at the secondary effects of the speech in-question. But that does not end the First Amendment analysis: Doctor John's argues that the ordinance enacts "further restrictions than are necessary" in order to curb the harmful secondary effects of adult-use establishments. And Doctor John's might be correct: the ordinance prohibits any adult-use establishments from opening within 1,000 feet of any school, public park, playground, day care center or facility, public housing property, church or other religious facility or institution, government building, institution of higher education, cemetery, or *any* establishment which is licensed to sell, dispense, or deliver alcoholic beverages. (ECF No. 1-3, p. 3.) That may cover the entire Village—resulting in an outright ban of adult-use businesses in Cahokia. While the Seventh Circuit has pondered in dicta whether municipalities should be able to get away with this, *see Illinois One News, Inc. v. City of Marshall, Illinois*, 477 F.3d 461, 463–64 (7th Cir. 2007), current law still dictates that the Village provide "reasonable alternative avenues of communication." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 328 (7th Cir. 2015) (quoting *Renton*, 475 U.S. at 50). Accordingly, since the ordinance could theoretically result in a ban on adult-use establishments in the Village, Doctor John's has stated a plausible First Amendment claim.

Doctor John's brings more First Amendment theories, but they are meritless. Chiefly, Doctor John's thinks that the ordinance is vague and overbroad because the ordinance considers an "adult novelty store" to be an establishment:

"having a substantial or significant portion of its sales or stock in trade consisting of toys, devices, clothing 'novelties,' lotions[,] and other items distinguished or characterized by their emphasis on for use for…specified anatomical areas…."

(emphasis added). The ordinance then defines "specified anatomical areas" to include genitals, buttocks, and breasts. Doctor John's thinks that the plain text of the ordinance could theortetically apply to common retailers who sell things like underwear and birth control, meaning that the ordinance (1) applies to more speech than is constitutionally permissible; (2) fails to provide definite notice as to what items fall within the scope of the ordinance; and (3) invites arbitrary enforcement. *See Bell v. Keating*, 697 F.3d 445, 452–55 (7th Cir. 2012) (explaining the elements of First Amendment overbreadth and vagueness). But that cannot be true, considering the ordinance only targets retailers who have a "substantial or significant portion of its sales or stock in trade" consisting of these types of items—not common retailers like department stores or pharmacies who may sell underwear and/or birth control in addition to the rest of their wares. And the Seventh Circuit has already instructed that the phrase "substantial or significant portion of its stock in trade" does not make an ordinance intolerably vague, considering it is "all but impossible to write a law or regulation without some qualitative words such as 'substantial'…." *Illinois One News, Inc. v. City of Marshall, Illinois*, 477 F.3d 461, 465–66 (7th Cir. 2007).

## B.     Procedural Due Process

Doctor John's next claims that the Village has deprived it of its right to procedural due process. Basically, Doctor John's argues that the adult-uses ordinance does not apply to it at all: the company says that it has always planned to adjust its stock in trade to comply with the B-1 ordinance—which governs standard-fare establishments like grocery and drug stores—and that the Village violated its due process rights by denying its business license without issuing a formal

ruling on the matter. The Village thinks that this argument is without merit because Doctor John's did not first exhaust its state remedies before bringing this suit.

The Due Process Clause of the Fourteenth Amendment imposes "basic procedural obligations on the government—in most cases, prior notice and a meaningful opportunity to be heard—before it deprives a person of life, liberty, or property." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018) (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985)), *reh'g denied* (June 8, 2018). To establish a violation of procedural due process, a plaintiff must show that (1) the defendant deprived him of a recognized life, liberty, or property interest; and (2) the deprivation occurred pursuant to either a faulty state procedure or a state official acting in a "random and unauthorized fashion." *Id.*; *see also Leavell v. Illinois Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010). If the deprivation happened because of a faulty state procedure, then the state will be liable if it did not provide the plaintiff a pre-deprivation hearing; post-deprivation hearings on their own do not suffice. *Leavell*, 600 F.3d at 804 (citing *Rivera–Powell v. New York City Bd. Of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). But if the state conduct was random and unauthorized, then a post-deprivation hearing will satisfy the requirements of procedural due process. *Id.*

The Court is constrained to address this issue: the briefing is a mess, presumably because the amended complaint is a mess. First, Doctor John's abjectly ignores the protected interest prong in all of its papers, and the Village skips the issue in its motion to dismiss. That alone is enough to warrant dismissal of the procedural due process claims—the Court is under no obligation to craft an argument for Doctor John's. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 722 (7th Cir. 2011). And the company again fails to address the next prong: whether the deprivation happened because of a faulty state procedure or random/unauthorized conduct. The Village assumes it was the latter,

and accordingly argues that Doctor John's could have obtained a post-deprivation hearing by filing a writ of mandamus in state court. *Figgs v. Dawson*, 829 F.3d 895, 907 (7th Cir. 2016). Doctor John's counters by arguing that when First Amendment rights are at issue, "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 228 (1990), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004). But Doctor John's ignores the fact that *FW/PBS* centered on when administrative safeguards are necessary when dealing with a First Amendment prior restraint theory—not a procedural due process theory. *Id.* at 225–29. Doctor John's also ignores the fact that a state mandamus action could have materialized as "prompt judicial review," defeating his theory here altogether. That, combined with the failure of Doctor John's to make any coherent argument on this matter warrants dismissal without prejudice of the procedural due process claims.

### C.    Substantive Due Process

The substantive due process claim is more complicated. Doctor John's claims that it has standing to assert the sexual privacy rights of its customers concerning the sale, possession, and use of sexual devices—all pursuant to the Fourteenth Amendment's Due Process Clause. Substantive due process is a mysterious doctrine. Starting in the 1960s, the Supreme Court found that "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance." *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965). Some of those guarantees "create zones of privacy"—namely the First, Third, Fourth, Fifth, and Ninth Amendments. *Id.* The *Griswold* court then held that the Fourteenth Amendment's Due Process Clause takes those zones of privacy and channels them into a general constitutional

right to privacy. *Id.* at 481. *Griswold* then utilized that doctrine to find unconstitutional a Connecticut statute that made it illegal to use contraceptives—vacating the convictions of a doctor and Planned Parenthood executive who received criminal convictions for assisting, abetting, and causing married persons to use birth control, in violation of the aforementioned statute.

Many cases since *Griswold* have expanded the "right to privacy" substantive due process doctrine to reach additional "fundamental rights." *See, e.g., Roe v. Wade,* 410 U.S. 113, 154 (1973) (concluding "that the right of personal privacy includes the [decision to have an abortion]"); *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992) (modifying *Roe*); *Lawrence v. Texas*, 539 U.S. 558, 584 (2003) (striking down a Texas law making sodomy illegal); *Obergefell v. Hodges*, — U.S. —, 135 S. Ct. 2584, 2606, 192 L. Ed. 2d 609 (2015) (holding that same-sex couples have a fundamental right to marry). Other cases, however, have declined to expand the doctrine when the court found no basis for it in "our Nation's history, legal traditions, and practices." *See, e.g., Washington v. Glucksberg,* 521 U.S. 702, 710 (1997) (holding that there is no fundamental right to assisted suicide).

Here, Doctor John's asks the Court to find that (1) its customers have a fundamental right of privacy in the sale, possession, and use of sexual devices; and (2) that Doctor John's has standing to bring that claim for its customers. First, on the merits issue, Doctor John's argues that *Lawrence v. Texas* has already commanded that consenting adults have a constitutional right to privacy in their sexual affairs: "[w]hen sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring…" and that "liberty [is] protected by the Constitution…." *Lawrence*, 539 U.S. at 567. *Lawrence* invalidated a Texas statute that criminalized sodomy, but Doctor John's believes that the holding also applies to the use of sex toys "in intimate conduct with another person." While it appears that

the Seventh Circuit has not weighed in on this yet, at least one other circuit has held that a statute making it illegal to sell sexual devices violates the principals seen in *Lawrence*. *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 746–47 (5th Cir. 2008).

The standing issue is a bit trickier. Neither party has identified a Seventh Circuit case that declares that retailers have standing to bring a substantive due process claim on behalf of its customers. Instead, Doctor John's begins by arguing that the petitioners in *Griswold* and the defendants in *Reliable Consultants* were the sellers of contraception rather than consumers. Doctor John's then points to an evolving line of Eleventh Circuit cases: in *Williams v. Morgan*, a case that postdated *Lawrence*, the Eleventh Circuit upheld an Alabama statute that criminalized the sale of sexual devices—reversing a district court holding that found that rights to sexual privacy are "deeply rooted in the history and traditions of our nation" and "encompass the right to use sexual devices like the vibrators, dildos, anal beads, and artificial vaginas marketed by vendors involved [in that case]." 478 F.3d 1316, 1319, 1323 (11th Cir. 2007). But a decade later—after *Obergefell* and *United States v. Windsor*, 570 U.S. 744, 749 (2013), two cases that dealt with fundamental rights to privacy in the same-sex context—the Eleventh Circuit was again faced with a municipal ordinance that criminalized the sale of sexual devices. *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia*, 831 F.3d 1342, 1348 (11th Cir. 2016), *reh'g en banc granted sub nom. Flanigan's Enterprises, Inc of Georgia v. City of Sandy Springs, Georgia*, 864 F.3d 1258 (11th Cir. 2017), *and on reh'g en banc*, 868 F.3d 1248 (11th Cir. 2017). The panel in that case explained that "*Windsor* and *Obergefell* cast serious doubt on *Williams*," but declined to overrule *Williams* in the absence of an *en banc* or Supreme Court decision. *Id.* The Eleventh Circuit did eventually grant a rehearing *en banc* in that case, but the issue became moot when the municipality amended the ordinance. 868 F.3d at 1255–63.

The problem for Doctor John's is that the Eleventh Circuit cases—just like with *Griswold* and *Reliable Consultants*—deal with criminal prohibitions on the sale of sexual devices. Standing in those cases is obvious: "[c]ertainly the accessory should have standing to assert that the offense which he is charged with assisting is not, or cannot constitutionally be a crime." *Griswold*, 381 U.S. at 481. The Village of Cahokia does not want to throw the owner of Doctor John's in jail for selling a sex toy. Instead, this is a cookie-cutter case about a zoning regulation. Doctor John's has not carried its burden in demonstrating that it has standing to bring a substantive due process claim, so the Court will dismiss it without prejudice.

### D. Equal Protection

This next theory dies quickly. The "equal protection argument fails because the Supreme Court has repeatedly upheld the ability of municipalities to regulate sexually-oriented businesses in order to minimize the secondary effects associated with such businesses." *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1001 (7th Cir. 2002) (internal citations omitted). Regardless, Doctor John's has not even addressed this matter in its response to the Village's motion to dismiss, and thus has waived it. *Bonte v. U.S. Bank, N.A.* , 624 F.3d 461, 466 (7th Cir. 2010). The Court will dismiss the Equal Protection theory without prejudice.

### E. Miscellaneous Arguments

Both sides also make a number of random arguments that require brief mentioning. First, the Village argues that the Court should dismiss Mayor Curtis McCall because he did not cause or participate in the alleged constitutional deprivations. *Wolf-Lillie v. Sonquist*, 699 F.2d 964, 869 (7th Cir. 1983). Doctor John's counters by saying that the mayor—the executive officer of the Village—is the proper party in this case if the Court were to order injunctive relief. Doctor John's is wrong: suing a public official in his official capacity "only another way of pleading an action

against an entity of which an officer is an agent[.]" *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, n. 55 (1978). "[N]othing was added by suing the mayor in his official capacity," so the Court will dismiss Curtis McCall from this case. *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987).

Next, the Village argues that many counts in the complaint—specifically, any count alleging that the Village improperly denied Doctor Johns's business license application for any reason other than the adult-uses zoning ordinance—are improper pursuant to *Monell*. That case held that a plaintiff may only sue a municipality under 42 U.S.C. §1983 if (1) the municipality had an express policy calling for constitutional violations; (2) it had a widespread practice of constitutional violations that was so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) if a person with final policymaking authority for the county caused the constitutional violation. 436 U.S. 658, 694; *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). This argument may have merit, but the Court will find it as moot until Doctor John's files its second-amended complaint. If that amended pleading is contained to the constitutionality of the zoning ordinance—which is an express, written policy of the Village—then the *Monell* issue becomes irrelevant.

Third, the Village argues that Count X of the complaint—which asks for attorney's fees—should be dismissed because 42 U.S.C. § 1988(b) authorizes attorney's fees as part of costs; not as an independent right of action. The Village is correct, and the Court will dismiss Count X. Doctor John's should instead ask for attorney's fees as a matter of costs or remedies—not as its own independent cause of action.

Both sides also make arguments that are devoid of merit. For example, Doctor John's repeatedly asserts that the Court has already ruled that their claims are legally sufficient—

14

specifically, because the magistrate judge denied the Village's second motion for a more definite statement and found the complaint met the pleading standards of Rule 8(a). That argument ignores the fact that Rules 8(a) and 12(b)(6) are, in fact, different rules of civil procedure with different standards.

On the other hand, the Village argues that Doctor John's does not have standing to challenge the adult-uses ordinance because the Village passed it a few days after they denied Doctor John's a business license. *See Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (explaining the requirements of standing). This argument ignores the fact that the complaint clearly alleges that the Village repeatedly insisted to Doctor John's that their store was "an adult entertainment business" that fell within the purview of the ordinance. (Am. Compl. at ¶ 26, ECF No. 26.) While the factual history here is unclear, the amended complaint has stated enough to confer standing on Doctor John's.

### F.     Fixing the Complaint

As the Court explained earlier in this order, the amended complaint references the following theories:

**Count I**: First Amendment; Fourteenth Amendment Procedural Due Process; Fourteenth Amendment Equal Protection; Fourteenth Amendment Substantive Due Process

**Count II**: First Amendment

**Count III**: Fourteenth Amendment Substantive Due Process; Fourteenth Amendment Equal Protection

**Count IV**: Injunctive Relief; First Amendment; Fourteenth Amendment Procedural Due Process; Fourteenth Amendment Equal Protection; Fourteenth Amendment Substantive Due Process

**Count V:** First Amendment; Fourteenth Amendment Substantive Due Process; Fourteenth Amendment Equal Protection

**Count VI**: First Amendment

**Count VII**: First Amendment

**Count VIII**: First Amendment; Fourteenth Amendment Procedural Due Process

**Count IX**: First Amendment

**Count X**: Attorney's Fees

This is not acceptable. So instead of dismissing individual counts, the Court **ORDERS** Doctor John's to file a second-amended complaint that complies with the entirety of this order. As a reminder, the Court has **DISMISSED WITHOUT PREJUDICE** the procedural due process, substantive due process, equal protection, and attorney's fees causes of action. The Court will give Doctor John's a chance to amend its complaint to save the procedural due process claim, *see Foman v. Davis*, 371 U.S. 178 (1962), The First Amendment theory may proceed. But Doctor John's must **NOT** plead any duplicitous counts: each cause of action must be limited to one (1) count, and Doctor John's shall clearly label **at the top of each count in bold print** which cause of action that count is limited to. The Court further **WARNS** Doctor John's that a failure to comply with the terms herein may result in the Court dismissing this case for failure to comply with an order of this Court pursuant to Federal Rule of Civil Procedure 41(b). The second-amended complaint is due by **October 1, 2018.**

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the defendants' motion to dismiss and **DISMISSES** Curtis McCall from this case **WITHOUT PREJUDICE**. (ECF No. 25.) The Court **ORDERS** Doctor John's to file a second-amended complaint by or on October 1, 2018 that addresses the issues explained herein. The Court further

**WARNS** Doctor John's that a failure to comply with this order may result in the dismissal of its case.

**IT IS SO ORDERED.**

**DATED:  SEPTEMBER 7, 2018**

**s/ _J. Phil Gilbert_**
**J. PHIL GILBERT**
**DISTRICT JUDGE**
